

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KAREN QUEVEDO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-4700-B (BF) |
| | § | |
| CAROLYN W. COLVIN, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Karen Quevedo ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act (the "Act"). The Court considered Plaintiff's brief, the Commissioner's response brief, and Plaintiff's reply brief. The Court also reviewed the record in connection with the pleadings. For the reasons that follow, the Court recommends that the final decision of the Commissioner be **AFFIRMED**.

### Background[1]

**Procedural History**

On September 29, 2010, Plaintiff filed her applications for DIB and SSI benefits. (Tr. 13, 161-71.) In her applications, Plaintiff alleged a disability onset date of July 2, 2008,[2] due to arthritis,

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

[2] In her application for SSI benefits, Plaintiff claims that her disability began on January 21, 2003. (Tr. 161.) However, at her hearing, Plaintiff testified that the date she provided was inaccurate and her disability actually began on July 2, 2008. (Tr. 44.)

psoriasis, vision loss in the right eye, and depression. (Tr. 13, 167, 185.) The applications were denied initially and again upon reconsideration. (Tr. 71-76, 83-86.)

Plaintiff requested a hearing, which was originally scheduled for December 6, 2011, however, because the medical expert, Dr. Murphy ("ME"), did not have a chance to review some of Plaintiff's medical records, the Administrative Law Judge ("ALJ") rescheduled the hearing to March 21, 2012. (Tr. 26-54.) Plaintiff, represented by counsel, testified at the hearing, along with the ME and a vocational expert, Ms. Konarov ("VE"). (Tr. 26.) Plaintiff was born on March 3, 1952, making her 60 years old at the time of the hearing. (Tr. 35, 167.) Plaintiff has a high school education. (Tr. 186.) Plaintiff's past relevant work experience includes work as an account receivable clerk and a real estate clerk. (Tr. 52.)

On April 16, 2012, the ALJ issued an unfavorable decision. (Tr. 13-25.) In that decision, the ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[3] Before proceeding to step one, the ALJ determined that Plaintiff met the disability insured status requirements through the date of the decision. (Tr. 15.) At step one, the ALJ determined that Plaintiff had not engaged in substantial work activity since July 2, 2008, her alleged onset date. (Tr. 15.) At step two, the ALJ found that Plaintiff's obesity, fibromyalgia, psoriasis, degenerative joint disease of the right knee, mild degenerative disc disease of the lumbar and cervical spine, and mild degenerative disc disease of the AC joint of the shoulder were severe impairments. (Tr. 15.) However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically

---

[3] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. § 416.920.

equal the requirements of any listed impairments for presumptive disability under the Social Security Regulations (the "Regulations"). (Tr. 15.)

Before proceeding to step four, the ALJ found that Plaintiff retained the RFC to perform sedentary work with the limitations that she could only stand or walk for up to two hours a day, she could not climb ladders or ropes, she could only do occasional postural activities, and she could do frequent bilateral handling, fingering, and overhead reaching. (Tr. 16.) At step four, based upon the testimony of the VE, the ALJ determined that Plaintiff was able to perform her past relevant work as an account receivable clerk and a real estate clerk. (Tr. 20-21.) Accordingly, the ALJ concluded that Plaintiff had not been under a disability as defined in the Act from her alleged onset date, July 2, 2008, through the date of the ALJ's decision. (Tr. 21.)

Plaintiff requested review of this decision from the Appeals Council, but the request was denied on September 18, 2012. (Tr. 1-5.) Thus, the ALJ's decision became the final decision of the Commissioner from which Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is

disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is

relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Analysis

The sole issue presented by Plaintiff is whether the ALJ properly rejected the opinion of her treating rheumatologist, Dr. Stephanie Hennigan, by adopting the opinion of the ME, in formulating Plaintiff's RFC. (Pl.'s Br. at 2, 10.) Plaintiff essentially contends that the ALJ failed to follow the treating physician rule when he rejected the opinion of Dr. Hennigan because he did not provide good cause for rejecting the opinion and he did not apply the Regulations' factors. (*Id.* at 17-25.)

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Newton*, 209 F.3d at 455 (citing *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. If good cause is shown, then the ALJ may accord the treating

physician's opinion less weight, little weight, or even no weight. *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1995). If the ALJ does not accord a treating doctor's opinion controlling weight, the ALJ must set forth specific reasons for the weight given, supported by the medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). If competing first-hand medical evidence from a treating or examining physician does not exist, the ALJ must consider specific factors before rejecting a treating physician's opinion.[4] *Newton,* 209 F.3d at 453, 458.

In this case, the ALJ rejected the opinion of Dr. Hennigan and he set forth specific reasons for doing so in his decision. (Tr. 19.) On December 6, 2011, Dr. Hennigan opined that Plaintiff would be limited in her work-related activities because she could only perform occasional reaching overhead; reaching forward; handling (seizing, grasping, turning, or working with her hands); and fingering (picking, pinching, or working with her fingers). (Tr. 623-25.) The doctor noted that these limitations began, at the earliest, in December of 2009, and lasted through the end of her treatment period, November 12, 2010. (Tr. 624-25.) The doctor was of the opinion that these limitations were applicable to both Plaintiff's left and right hands and arms. (Tr. 624.) Further, Dr. Hennigan noted that the provided limitations were based on Plaintiff's diagnoses of psoriatic arthritis and fibromyalgia. (Tr. 625.)

In his decision, the ALJ explained that he could not accept this opinion because (1) it was inconsistent with the evidence as a whole, which demonstrated that Plaintiff had good use of her

---

[4] These factors include: 1) the physician's length of treatment of the plaintiff, 2) the physician's frequency of examination, 3) the nature and extent of the treatment relationship, 4) the support of the physician's opinion afforded by the medical evidence of record, 5) the consistency of the opinion with the record as a whole, and 6) the specialization of the treating physician. 20 C.F.R. § 404.1527(c)(2).

upper extremities and normal x-rays; (2) it was inconsistent with Plaintiff's testimony at the hearing that she could lift a gallon of milk; and (3) it was inconsistent with Plaintiff's receipt of unemployment benefits where she had to represent that she was able to work full-time. (Tr. 19.) In her brief, Plaintiff contends that these reasons cited by the ALJ do not provide the requisite good cause for rejecting Dr. Hennigan's opinion. (Pl.'s Br. at 12.) However, because Dr. Hennigan's opinion is not supported by objective testing or the medical evidence in the record,[5] the ALJ had good cause to discredit her opinion. *See Newton*, 209 F.3d at 456.

As noted by the ALJ, Dr. Hennigan's opinion is not consistent with the evaluation provided by Dr. A. Tavarekere. At the request of the Commissioner, Plaintiff was examined by Dr. Tavarekere on December 18, 2010. (Tr. 512-14.) In the examination, the doctor noted that Plaintiff complained of constant pain in her hands and wrists due to psoriatric arthritis. (Tr. 512.) Plaintiff informed the doctor that Methotrexate helped with her hands, but it caused her problems with her eyes so she stopped taking the medication. (*Id.*) The doctor noted that Plaintiff has skin lesions on her hands and in her thumb nails, and she has tried several medications but to no avail. (*Id.*) Regarding her upper extremity activities, Plaintiff told the doctor that she is right-handed, she can write, and she can button clothes, however, she cannot hold a coffee cup, cannot sweep, and cannot lift weight above her head. (*Id.*) A physical examination revealed normal range of motion and no joint tenderness or enlargements in Plaintiff's right and left upper extremities. (Tr. 513-14.) Further, her hand grip was 5/5, normal and symmetric; her fine finger movements were normal; and the doctor noted that she

---

[5] This Court will limit its analysis to the evidence concerning Plaintiff's arms and hands, as Plaintiff explains in her brief that her "focus is on the limitations related to her arms and hands." (Pl.'s Br. at 10.)

has the ability to handle small objects and button clothing. (Tr. 514.)

Dr. Hennigan's opinion is also inconsistent with some of her own treatment notes, including x-rays the doctor obtained. On July 29, 2009, Dr. Hennigan ordered x-rays of Plaintiff's right and left hand. The findings for both Plaintiff's right and left hand were normal and there was no sign of a fracture, subluxation, or dislocation. (Tr. 481-82.) The soft tissues in both of her hands also appeared to be within normal limits. (*Id.*) All three views of each of Plaintiff's hands were normal. (*Id.*) Furthermore, the x-rays revealed no inflammatory changes. (Tr. 384.)

Although Dr. Hennigan described Plaintiff's psoriasis as severe and limiting her daily activities on July 30, 2009, the doctor also noted that Plaintiff had no inflammatory changes, her inflammatory markers were normal, and she had minimal morning stiffness with no joint swelling. (Tr. 372-73.) Additionally, at her initial evaluation on July 28, 2009, Plaintiff had no joint swelling and no clubbing or edema of any extremity. (Tr. 363-64.) A physical examination performed by Dr. Hennigan on October 26, 2009, revealed no joint swelling; no clubbing, cyanosis, or edema of any extremity; the doctor noted that she was unable to see nail changes because Plaintiff had acrylic nails in place; and Plaintiff had psoriasis on her palms and fingernails with cracking and splitting. (Tr. 378-79.) An examination on December 7, 2009, showed that while Plaintiff had tenderness to the MCP and DIP joints, she only had very mild swelling of the 2nd and 3rd MCP joints. (Tr. 386-87.) Further, the doctor noted that Plaintiff had no clubbing, cyanosis, or edema of any extremity, and she was unable to see nail changes because Plaintiff had on acrylic nails. (*Id.*) Similarly, an exam on January 18, 2010, demonstrated that Plaintiff still had some tenderness in her joints and wrists but she had no swelling; she had no clubbing, cyanosis, or edema of any extremity; and she had psoriasis on her palms and fingernails, but it had improved since her last exam and there was no cracking or

splitting. (Tr. 394-95.) The doctor advised Plaintiff that it would be a good idea to remove her acrylic nails due to her psoriasis and the doctor additionally diagnosed Plaintiff with fibromyalgia. (Tr. 407.)

A physical examination on February 15, 2010, similarly revealed that Plaintiff still had some tenderness in her joints and wrists but she had no swelling; she had no clubbing, cyanosis, or edema of any extremity; and she had psoriasis on her palms and fingernails, but there was no cracking or splitting. (Tr. 409-410.) An examination on March 8, 2010, showed that Plaintiff's psoriasis on her hands was terrible and she had musculoskeletal tenderness to the touch, but an examination of her upper extremities appeared normal. (Tr. 452-53.) On November 12, 2010, Plaintiff had musculoskeletal tenderness to the touch but no joint swelling and no clubbing, cyanosis, or edema of any extremity. (Tr. 489-90.) Thus, even Dr. Hennigan's physical examination findings are inconsistent with her opinion that Plaintiff must be limited to occasional manipulative activities. More weight will be given to a physician's opinion that presents relevant medical evidence such as signs and laboratory findings in support of such opinion. *Greenspan,* 38 F.3d at 238.

At the hearing, the ME testified that the objective medical evidence demonstrated that Plaintiff's RFC should include manipulative limitations such that Plaintiff could only perform frequent handling, overhead reaching, and fingering. (Tr. 31.) The ME considered Dr. Hennigan's opinion in making this RFC assessment, as he specifically mentioned that the doctor opined that Plaintiff could only perform occasional manipulative activities due to arthritis and fibromyalgia. (*Id.*) However, the ME also noted that a physical RFC assessment form completed by state agency medical consultant, Dr. Andrea Fritz, M.D., on February 18, 2011, demonstrated that there were no manipulative limitations established in the record. (Tr. 536-43.)

Although Dr. Richard Townsend, M.D., opined that Plaintiff's psoriasis was "debilitating," (Tr. 555, 558), his physical examination findings consistently report normal skin color, normal reflexes, no edema, non-tender extremities, and no weakness in her extremities. (Tr. 552, 555, 558, 560, 562-63.) In addition, on numerous occasions, the doctor noted that Plaintiff had no rashes. (Tr. 552, 558, 560, 562.) The medical evidence in the record, taken as a whole, simply does not support the limitations opined by Dr. Hennigan, which would effectively limit Plaintiff to only reaching, handling, and fingering up to 2 2/3 hours of an 8-hour workday.[6] Instead, the ALJ found that the evidence in the record, as well as the ME's opinion, supported a finding that Plaintiff would be able to reach, handle, and finger up to 5 1/3 hours of an 8-hour workday.[7]

In addition to the medical evidence, the ALJ also noted that Dr. Hennigan's opinion was inconsistent with Plaintiff's testimony that she could carry a gallon of milk. At the hearing, Plaintiff testified that she could lift a "five pound bag of sugar I would or a carton of milk." (Tr. 37.) Plaintiff also testified that she has trouble with some door handles, opening bottles of water, and cutting some foods. (*Id.*) Finally, the ALJ found that Plaintiff's receipt of unemployment benefits from 2009 through at least the third quarter of 2010 was inconsistent with Dr. Hennigan's opinion. During the time period for which Dr. Hennigan opined that Plaintiff was restricted to only occasional reaching, handling, and fingering, Plaintiff was receiving unemployment benefits, wherein she represented to the state that she was both mentally and physically capable of full-time employment. (Tr. 46-47.) At the hearing, Plaintiff testified that she was aware that she made such representations to the state and

---

[6] The Court notes that "occasional" is defined as up to 2 2/3 hours of an 8-hour workday. (Tr. 624.)

[7] "Frequently" is defined as up to 5 1/3 hours of an 8-hour workday. (Tr. 624.)

10

that she would have gone to work full-time but she was not sure how long she would make it. (*Id.*) The Court finds that the ALJ provided the requisite good cause for rejecting Dr. Hennigan's opinion.

Next, Plaintiff contends that the ALJ was required to analyze the § 404.1527(c)(2) factors before rejecting Dr. Hennigan's opinion. (Pl.'s Br. at 18-20.) However, in rejecting Dr. Hennigan's opinion, the ALJ cited to competing first-hand medical evidence which contradicted the doctor's opinion. Accordingly, a detailed analysis of the factors was not required.[8] *See Newton,* 209 F.3d at 455-57; *see also Rollins v. Astrue,* 464 Fed. Appx. 353, 358 (5th Cir. 2012) ("where there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in § 404.1527(d)(2) is unnecessary.").

Plaintiff argues that the ALJ accepted the opinion of the ME over the opinion of Dr. Hennigan and, thus, he was required to analyze the § 404.1527(c)(2) factors. In her reply brief, Plaintiff avers that there were only two opinions given on whether Plaintiff had limited use of her hands, the opinion of the ME and the opinion of Dr. Hennigan. (Pl.'s Reply Br. at 7-9.) Plaintiff then proceeds to misconstrue the case law in the Fifth Circuit by placing a requirement that the competing first-hand medical evidence must be "competing opinion evidence." (*Id.* at 8.) However, this argument is misplaced. *See Rollins,* 464 Fed. Appx. at 358 (finding that medical tests conducted during a physical examination by an examining physician that found no restrictions on the plaintiff's

---

[8] The Court notes that Plaintiff cites to two cases, *Beasley v. Barnhart,* 191 Fed. Appx. 331 (5th Cir. 2006) and *Gittens v. Astrue,* No. 3:04-CV-2363-L, 2008 WL 631215 (N.D. Tex. Feb. 29, 2008), to support her position that remand is required because the ALJ failed to analyze the Regulations' factors. However, both cases are distinguishable from the facts at hand because the ALJ in *Beasley* relied on the opinion of the non-examining state agency medical consultant over the opinion of the treating physician and the ALJ in *Gittens* relied on the non-examining medical expert's opinion to discredit the treating physician's opinion. *See Beasley,* 191 Fed. Appx. at 336; *Gittens,* 2008 WL 631215, at *3, *5.

11

manipulative abilities constituted reliable medical evidence that contradicted the treating physician's opinion). Here, the results of the physical examination performed by the examining physician, Dr. Tavarekere, suffice to constitute reliable medical evidence that contradicted the opinion of Dr. Hennigan. Hence, Plaintiff's argument that the ALJ relied solely on the opinion of the ME to refute Dr. Hennigan's opinion is not accurate.

Moreover, the ALJ did consider several of the factors, including the consistency of the doctor's opinion with the record as a whole and the support of Dr. Hennigan's opinion afforded by the evidence in the record. The Court finds that the ALJ provided the requisite good cause for rejecting the opinion of Dr. Hennigan. The ALJ rejected Dr. Hennigan's opinion for several reasons, but the primary reason was because the opinion was inconsistent with the other evidence in the record and inconsistent with Dr. Hennigan's objective testing. Furthermore, the ALJ was not required to analyze each of the § 404.1527(c)(2) factors because he relied on competing first-hand medical evidence in discounting the treating physician's opinion. Substantial evidence supports the ALJ's decision to reject the opinion of Dr. Hennigan. Accordingly, the Court also finds that the ALJ followed the treating physician rule and did not commit prejudicial legal error. Substantial evidence, therefore, supports the ALJ's RFC formulation and his ultimate decision regarding disability.

### Recommendation

For the foregoing reasons, the Court recommends that the District Court **AFFIRM** the decision of the Commissioner, as the ALJ followed the treating physician rule and his decision is supported by substantial evidence, and dismiss Plaintiff's Complaint with prejudice.

**SO RECOMMENDED**, January 2, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).